UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BERT F. HESS,
        Plaintiff,

v.                                                C.A. No. 08-393

TOWN OF SOUTH KINGSTON, and
ALAN R. LORD, in his capacity as Finance
Director, Town of South Kingston, and
RUSSELL W. BROWN, in his capacity as
Building Official, Town of South Kingston,
        Defendants.

**Memorandum and Order**

This matter concerns an underground culvert pipe, a drainage system, and surface water runoff being deposited on land owned by Bert F. Hess ("Plaintiff"). The remaining counts[1] in the complaint allege that the Town of South Kingston ("Town" or "Defendants") committed a trespass and that the Town's actions constituted a taking under both the Rhode Island and United States Constitutions. The matter is before the Court on Defendants' motion for summary judgment.

I. Summary Judgment

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could resolve the issue in

---

[1] Plaintiff voluntarily dismissed three counts in the complaint.

1

favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court views the record and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991).

## II. Facts

Plaintiff is the owner of a parcel of property located on Green Hill Beach Road in South Kingston, Rhode Island, identified as Assessor's Map 96-1, Lot 89 ("Lot 89"). Plaintiff purchased Lot 89, on June 16, 2003, at a tax sale. Plaintiff foreclosed all rights of redemption, under the tax collector's deed, on April 1, 2005.

The previous owners of Lot 89 were John and Gertrude McGlinchy. The McGlinchys purchased Lot 89 and Lot 84 in May of 1952.[2] Lot 84 is located almost directly across the street from Lot 89. At some point prior to 1977, while the McGlinchys owned Lot 89, an underground culvert pipe was installed in front of Lot 84 to Lot 89.[3] One of the purposes of the pipe was to provide water drainage relief for Lot 84.

---

[2] John McGlinchy, Jr. was added as an owner in 1976 and became the sole owner of Lot 89 in 1991.

[3] There is no specific evidence in the record as to the exact date that the culvert pipe was installed.

In July 1977, Mr. McGlinchy requested that the Town flush out the culvert pipe to improve drainage in the area of lot 84. In response to Mr. McGlinchy's request, the Town proposed to cure the drainage problem by extending the culvert pipe, installing a catch basin drainage system, regrading an "unkempt area" between the road and Lot 84 and having Mr. McGlinchy regrade a portion of Lot 84. Defendants' Exhibit D. In an October 1977 letter to Mr. McGlinchy, the Town outlined its proposal to cure the drainage problem and noted that "the offer is now being made to resolve this problem on a long range basis. If you wish to pursue the matter under the conditions mentioned . . . please contact [the Town] to discuss it in more detail." Defendants' Exhibit E (emphasis added). Mr. McGlinchy informed the Town that he would "do whatever the [T]own of South Kingston recommends that is reasonable to assist in the drainage problem." Defendants' Exhibit F. The Town completed the extension of the culvert pipe and the installation of the drainage system in June 1978.

In a January 2, 1990, letter from the Town to Mr. McGlinchy concerning Lot 89, the Town informed Mr. McGlinchy that the Town planned to reconstruct a portion of Green Hill Beach Road and to replace "an existing 12" metal pipe with 12" concrete pipe." Plaintiff's Exhibit 1. The letter noted that the pipe "presently discharges onto your lot." Id. The letter stated that the Town was seeking Mr. McGlinchy's "consent to continue to discharge the storm runoff onto your property." Id. (emphasis added). The letter also advised that the Town "wanted to inform [McGlinchy] of [the Town's] intention to replace the culvert. We will prepare plans and an easement for your approval." Id.

In or about June 2006, Plaintiff filed a request with the Coastal Resources Management Council ("CRMC") to cut vegetation on Lot 89 to construct two parking spaces. The CRMC

deemed the request incomplete because the request did not include Town authorization for the construction of parking spaces on Lot 89. The Town rejected Plaintiff's request for the construction of parking spaces on Lot 89 because parking on Lot 89 was not an approved use under the Town zoning ordinance. In November 2007, the Town unclogged the culvert pipe and removed debris from the drainage system on Lot 89. In December 2007, the Town removed debris from the road shoulder adjoining Lot 89 to bring it back to its original grade elevation. In February 2008, Plaintiff served and recorded a notice of intent to dispute interrupting adverse possession on the Town.

### III. Analysis

Defendants contend that the Town obtained a prescriptive easement in or before 1988[4] in the surface water drainage system. Defendants argue that the installation, use and maintenance of the culvert pipe and the drainage system, by the Town, has been open, notorious, hostile, adverse and continuous. Plaintiff asserts that the evidence does not establish that the Town's encroachment upon Lot 89 was continually adverse and hostile. Plaintiff argues that the Town's use of Lot 89 for drainage did not become adverse and hostile until Plaintiff acquired title in 2003.

In order for the Town to establish that it has a prescriptive easement it must show "actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years." Hilley v. Lawrence, 972 A.2d 643, 651-52 (R.I. 2009) (internal quotation marks and citation omitted); see generally Reitsma v. Pascoag Reservoir & Dam, LLC, 774 A.2d 826 (R.I. 2001)

---

[4]The Town argues that it obtained a prescriptive easement in the culvert pipe in 1987 and in the drainage system in 1988.

(municipality can obtain prescriptive easement). "It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is done openly on his land." Reitsma, 774 A.2d at 831 (internal quotation marks and citation omitted). The Town must prove each element by "clear and satisfactory evidence." Hilley, 972 A.2d at 652. Factual determinations are generally necessary to determine whether a prescriptive easement has been established. Id. If permission is granted for a particular use, a later use of the same kind cannot be adverse. Hilley, 972 A.2d at 652. "A permissive use may become hostile only when the permission has been withdrawn . . . or [when] events have occurred indicating that the original permission no longer obtained." Id. (internal quotation marks and citation omitted).

Because the Town is the moving party here, the Court must view the evidence in the light most favorable to Plaintiff. The correspondence between Mr. McGlinchy and the Town establishes a genuine issue of material fact concerning whether the Town's use of Lot 89 was adverse and hostile. In its October 1977 letter to Mr. McGlinchy, the Town outlined its proposal to extend the culvert and rectify the drainage problem and then made an offer to Mr. McGlinchy to resolve the matter. Mr. McGlinchy responded that he would do whatever the Town recommended that was reasonable to rectify the drainage problem. The Town's offer, viewed in the light most favorable to Plaintiff, could reasonably be considered a request for Mr. McGlinchy's permission for the Town to construct the new drainage system as outlined it the Town's letter to Mr. McGlinchy and to continue using the culvert and Lot 89 for proper drainage of the area. McGlinchy accepted the Town's offer and the work was completed according to the Town's proposal. The Town's offer, and McGlinchy's acceptance of that offer, raise an inference of permissive use. See Burke-Tarr Co. v. Ferland Corp., 724 A.2d 1014 (R.I. 1999)

(inference of permissive use defeats element of hostile use).

Furthermore, the January 1990 letter from the Town to Mr. McGlinchy also lends support to the conclusion that there is a genuine issue of material fact concerning whether the Town's use of Lot 89 was hostile and adverse. In that letter, the Town sought Mr. McGlinchy's *consent* to continue discharging storm runoff on Lot 89. The Town also informed Mr. McGlinchy that it was preparing plans for an easement for Mr. McGlinchy's *approval*. This letter also supports the conclusion that a genuine issue of material fact exists concerning whether the Town's use of Lot 89 was permissive. See generally id.

The Court concludes that genuine issues of material fact exist concerning whether the Town's use of Lot 89 and the drainage system was adverse and hostile. Since the Town must, as an element of its claim of a prescriptive easement, prove that its use of Lot 89 was adverse and hostile, its motion for summary judgment fails.

For the reasons stated above, the Town's motion for summary judgment is DENIED.

SO ORDERED

*/s/ Mary M. Lisi*
Mary M. Lisi
Chief United States District Judge
October 22, 2009